UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| EFREN BULLARD,    Plaintiff,  v.  R. ST. ANDRA, et al.,    Defendants. | **CASE No. 1:17-cv-0328-MJS (PC)**  **ORDER REQUIRING PLAINTIFF TO EITHER FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON COGNIZABLE CLAIM**  **(ECF NO. 1)**  **THIRTY-DAY DEADLINE** |
|---|---|

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's March 7, 2017, Complaint is before the Court for screening.

**I.  Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.  Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

1 | Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. Plaintiff's Allegations

Plaintiff complains of conduct occurring while he was housed at High Desert State Prison ("HDSP") in Susanville, California, and then at Corcoran State Prison ("CSP") in Corcoran, California.[1] Plaintiff names HDSP Warden R. St. Andra, Correctional Officer ("CO") Benson, and Sergeant ("Sgt.") Jane Doe. He also names CSP Warden Davie, CO B.W. Davis, CO A. Bustinza, Sgt. C. Love, Sgt. Wilson, and Lieutenant ("Lt.") John Doe/P[2]. Finally, he names M. Voong, Chief at the California Department of Corrections and Rehabilitation Office of Appeals.

---

[1] Plaintiff is now housed at Kern Valley State Prison in Delano, California.
[2] Although Plaintiff does not know the full name of this individual, he believes this Defendant's last name begins with the letter "P."

Plaintiff's claims may be fairly summarized as follows:

On November 25, 2015, while housed at HDSP, Plaintiff was escorted by CO Benson to Receiving and Release ("R&R") due to an upcoming transfer to CSP. Once at R&R, CO Benson commented to CO Jane Doe, "I think inmate Bullard is walking weird." CO Jane Doe said, "We'll give him the old treatment." These two officers then took Plaintiff to a private room where CO Jane Doe closed the door. There, CO Benson held Plaintiff down while CO Jane Doe stuck a finger inside Plaintiff's rectum. Afterward, CO Jane Doe said, "I don't think he'll walk weird anymore," and CO Benson laughed while asking "Did you strike gold?" Neither of these Defendants reported the search.

Plaintiff filed a grievance concerning this incident at HDSP and asked that it be kept confidential. On December 11, 2015, after he was transferred to CSP, he was interviewed by CSP staff members Lt. John Doe/P and Sgt. Wilson. Later that same day, CSP Warden Davie sent Sgt. Love of the I.S.U. Investigative Service Unit to interview Plaintiff.

Per Plaintiff, the December 11, 2015, interviews establish HDSP Warden St. Andra's liability because, instead of directing HDSP staff to interview Plaintiff, this Defendant directed CSP staff members to interview him, putting Plaintiff "at risk to ridicule & reprisals," which he claims he did suffer. Warden St. Andra also failed to properly investigate Plaintiff's allegations. Regarding Warden Davie, the interviews purportedly establish his liability because he used to work at HDSP.

On December 27, 2015, Plaintiff submitted a staff complaint at CSP that was rejected the next day. The appeal requested that (1) Plaintiff's personal property be located and returned to him; (2) he to be taken to the ICC Institutional Classification Committee; (3) his legal work be returned to him; (4) these reprisals against him stop; and (5) the Office of Internal Affairs investigate the matter.

On an unspecified date, CO Davis approached Plaintiff's cell to escort him to the nurse's office. At Plaintiff's cell door, CO Davis asked "Ain't you the Bullard who filed a

602 against high desert staff?" CO Davis then left Plaintiff's door and did not escort Plaintiff to the nurse. Plaintiff claims this was in retaliation for his grievance.

Defendants Warden St. Andra and Warden Davie conspired with the other Defendants to retaliate against Plaintiff for his sexual assault grievance. They also violated Plaintiff's confidentiality rights as a sexual assault victim.

Plaintiff's multiple appeals regarding the sexual assault at HDSP were denied by Defendant Voong.

Plaintiff seeks damages and declaratory relief.

## IV. Analysis

### A. Eighth Amendment

#### 1. Sexual Harassment or Abuse

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (alteration in original) (internal quotation marks omitted) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)). "The alleged pain may be physical or psychological." Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993)).

A contraband search may fall under the constitutional protections of the Eighth Amendment "[i]f the search were conducted for purposes unrelated to security considerations" or otherwise is not reasonably related to a legitimate penological need. Buckley v. Alabama, 2012 WL 6570430 (E.D. Cal. 2012), citing Tribble v. Gardner, 860 F.2d 321, 325 n.6 (9th Cir. 1988). A contraband search in the absence of security reasons warrants an inference of an intent to punish. See Tribble, 860 F.2d at 325 n.6;

see also Meriwether v. Faulkner, 821 F.2d 408, 418 (7th Cir. 1987) ("The Eighth Amendment's prohibition against cruel and unusual punishment stands as a protection from bodily searches which are maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification.'"). In Bell v. Wolfish, the Supreme Court observed that a search conducted in an abusive fashion "cannot be condoned .... [and therefore,] ... must be conducted in a reasonable manner." 441 U.S. 520, 560 (1979).

"[R]ectal searches are highly intrusive and humiliating." Tribble, 860 F.2d at 324. Indeed, "rectal searches are one of the most intrusive methods of detecting contraband." Id. at 325. To substantiate a rectal search, "the government must show that a legitimate penological need necessitated the search." Id. Without a legitimate penological need, such sexual contact is "simply not part of the penalty that criminal offenders pay for their offenses against society," Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir.2000), and "is deeply offensive to human dignity." Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991). Therefore, where uninvited sexual contact is totally without penological justification, even though it does not produce serious injury, it results in the gratuitous infliction of suffering, which violates contemporary standards of decency and the Eighth Amendment. See Calhoun v. Detella, 319 F.3d 936, 939 (7th Cir. 2003).

However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (some internal quotation marks omitted).

Plaintiff first accuses CO Jane Doe of violating his rights on December 11, 2015, when she inserted a finger in Plaintiff's rectum. Plaintiff's allegations, though, suggest a penological purpose for this conduct. That is, CO Jane Doe conducted the search after CO Benson noted that Plaintiff was "walking weird," suggesting that Plaintiff was hiding

contraband in a body cavity. Based on these allegations, and in the absence of any facts that the search was conducted in a particularly egregious manner, the Court must conclude that Plaintiff has not asserted an actionable claim against CO Jane Doe.

### 2. Failure to Protect

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer, 511 U.S. at 832 (internal quotation marks and citation omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison official must subjectively have a "sufficiently culpable state of mind . . . one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

Plaintiff accuses CO Benson of failing to intervene when CO Jane Doe conducted a physical rectal search. But as noted supra, this search, as alleged, did not violate Plaintiff's Eighth Amendment rights. Accordingly, Plaintiff's claim against CO Benson must also be dismissed.

### 3. Failure to Report

An officer is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Failing to report

an incident that has already taken place, without more, does not constitute a disregard for an excessive risk to inmate health or safety. Plaintiff asserts that neither Defendants CO Benson nor CO Jane Doe reported the search. Failure to report the incident does not violate the Eighth Amendment absent facts showing that by failing to report the incident, defendants knowingly disregarded an excessive risk to Plaintiff's health or safety. Moreover, the allegation that not reporting the incident was a violation of department policy and state law does not establish that there was a constitutional violation. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (citations omitted). Plaintiff's failure to report claim against these Defendants will therefore be dismissed.

### B. First Amendment

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, pursuing a civil rights legal action is protected activity under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff claims that, because of his grievance against CO Benson and CO Jane Doe, CSP staff retaliated against him by taking his personal property and failing to return his legal property. These allegations are far too vague and conclusory to state a claim. They will therefore be dismissed.

Plaintiff also accuses CO Davis of failing to escort Plaintiff to a nurse after asking if Plaintiff was the one who complained about a sexual assault. These allegations are sufficient to suggest an improper motive. They also suggest that CO Davis's decision to leave without escorting Plaintiff to a medical appointment did not advance a legitimate goal. The Court further finds that the refusal of an officer to escort an inmate to a medical appointment in retaliation for the filing of a grievance would chill or silence a person of ordinary firmness from filing future complaints. Accordingly, Plaintiff states a retaliation claim against CO Davis.

**C. Conspiracy**

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983, and it

does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989). However, "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1302 (9th Cir. 1999). Therefore, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id. at 1301.

Plaintiff claims that Defendants CO Benson and CO Jane Doe conspired to sexually assault Plaintiff. Since the undersigned finds that Plaintiff has not alleged an actionable claim against either of these Defendants, any claim of a conspiracy necessarily fails. His conspiracy claim as to the other Defendants also fails because his allegations are too vague and speculative to suggest a meeting of the minds.

### D. Inmate Appeal Process

#### 1. Failure to Investigate / Respond

Plaintiff alleges that Warden St. Agata, Warden Davie, and the Defendants who interviewed him failed to properly investigate his claims of sexual assault. He also accuses Defendant Voong of improperly responding to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance

procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10. Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495.

### 2. Right to Confidentiality

Finally, Plaintiff accuses those involved in the processing of his appeal of violating his right to confidentiality. Plaintiff, however, does not have such a right in the inmate appeal process. Pursuant to 15 C.C.R. § 3141, confidential correspondence is permitted between prisoners and various categories of individuals. Notably absent from this list are prison grievances. Plaintiff states that the grievances contained confidential information and exposed him to retaliation. However, the requisite characteristic for a confidential correspondence is not the contents, but the recipient. As a general matter, there is no right to privacy in the mail in prison, United States v. Choate, 576 F.2d 165 (9th Cir. 1978), and "prison officials may examine the communications of a prisoner without infringing upon his rights." United Sates v. Wilson, 447 F.2d 1, 8 n.4 (9th Cir. 1971). As a result, these allegations fail to state a claim.

### E. Doe Defendants

With respect to the Doe defendants, Plaintiff is advised that the use of fictitiously named Doe defendants is generally not favored. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, amendment is allowed to substitute true names for fictitiously named defendants. Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir. 1989). Plaintiff is further advised that even if the Court finds that Plaintiff has stated a claim against a Doe Defendant, service will not occur until these Defendants are identified by name.

**F.     Linkage**

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each Defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978). Plaintiff has named CO A. Bustinza but has not asserted any allegations as to this individual. CO Bustinza must therefore be dismissed.

**V.     Conclusion**

Plaintiff's complaint states a single First Amendment retaliation claim against CO Davis. All other claims and Defendants must be dismissed.

The Court will grant Plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If Plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claim found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claim. The Court then will recommend dismissal of the remaining claims and that Plaintiff be provided with the requisite forms to complete and return so that service of process may be initiated on CO Davis.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed only on the claim found to be cognizable in this order; and
3. If Plaintiff fails to comply with this order, the undersigned will dismiss this action for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated: April 18, 2017          /s/ *Michael J. Seng*
                               UNITED STATES MAGISTRATE JUDGE