UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFREN DANIELLE BULLARD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>R. ST. ANDRA, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:17-cv-0328-LJO-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT<br><br>　1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST BE DENIED<br>　2) PLAINTIFF'S REQUEST TO VACATE THE PROTECTIVE ORDER BE GRANTED<br>　3) DEFENDANTS' MOTION TO VACATE THE DISCOVERY AND SCHEDULING ORDER BE GRANTED<br><br>(Doc. Nos. 23, 41.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

　　Plaintiff Efren Bullard is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. This action proceeds on plaintiff's first amended complaint against (1) defendant Correctional Officer ("CO") Jane Doe for conspiracy and violation of the Eighth Amendment; (2) defendant CO Benson for conspiracy and violation of the Eighth Amendment; and (3) defendant CO David for retaliation under the First Amendment.

On February 16, 2018, defendants moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that plaintiff failed to exhaust available administrative remedies. (Doc. No. 23.)  Plaintiff filed an opposition on April 9, 2018 (Doc. No. 33), and defendants filed a reply on April 17, 2018 (Doc No. 35.)  The motion was submitted on the record without oral argument under Local Rule 230(*l*).[1]

Defendants' motion for summary judgment is now before the court.  After consideration of all the materials presented, as well as the applicable law, the undersigned will recommend denying defendants' motion for summary judgment on plaintiff's claims because defendants failed to satisfy their initial burden to establish that the prisoner did not exhaust an available administrative remedy.  If the assigned district judge adopts the undersigned judge's findings and recommendations denying the motion for summary judgment, the undersigned further recommends that he vacate the protective order staying all discovery (Doc. No. 29) and grant defendants' motion (Doc. No. 41) to vacate the present discovery and scheduling order (Doc. No. 22).

### I. LEGAL STANDARDS

#### A. Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will

---

[1] As required by *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998), plaintiff was provided with notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies via an attachment to the defendants' motion for summary judgment. (Doc. No. 23-1.)

often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates that summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

**B. Exhaustion Requirement**

Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Unexhausted claims require dismissal. *See Jones v. Bock*, 549 U.S. 199, 211 (2007).

4

A prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. *Id.* at 218. When a prison's grievance procedures do not specify the requisite level of detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted). "The grievance 'need not include legal terminology or legal theories,' because '[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (alteration in original) (quoting *Griffin*, 557 F.3d at 1120).

There are no "special circumstances" exceptions to the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1856-57, 1859 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 1856. The Supreme Court has explained when an administrative procedure is unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 1859-60 (citations omitted); *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies.").

If the court concludes that plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**C. CDCR's Administrative Remedy Process**

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate

grievances. *See* Cal. Code Regs. tit. 15, § 3084.1 (2014). To exhaust available remedies during the relevant time period, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. *Id.* § 3084.5. A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance") within thirty calendar days (1) of the event or decision being appealed, (2) from the time the prisoner first had knowledge of the action or decision being appealed, or (3) from the time the prisoner received an unsatisfactory departmental response to an appeal filed. *Id.* §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted). The grievance must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." *Id.* § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." *Id.* § 3084.2(a)(4). Inmate grievances are subject to cancellation if "time limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." *Id.* § 3084.6(c)(4).

## II. SUMMARY OF ALLEGATIONS UNDERLYING PLAINTIFF'S COGNIZABLE CLAIMS

Plaintiff is currently incarcerated at Kern Valley State Prison in Delano, California. (First Am. Compl. ("FAC"), Doc. No. 8, at 1.) His claims arise from events that took place at the High Desert State Prison ("HDSP") in Susanville, California, (*id.* at 11), and then at Corcoran State Prison ("CSP") in Corcoran, California, (*id.* at 34). Plaintiff names HDSP CO Benson and CO Jane Doe. (*Id.* at 1.) He also names CSP CO B.W. David.[2] (*Id.* at 1.)

Plaintiff alleges that on November 25, 2015, while housed at HDSP, Plaintiff was escorted by CO Benson to Receiving and Release pending transfer to CSP. (*Id.* at 11.) Once at Receiving and Release, CO Benson commented to CO Jane Doe, "I think inmate Bullard is walking weird." (*Id.* at 11-13.) Plaintiff claims this was a "false assumption that plaintiff had

---

[2] According to the defendants, "Officer David [was] incorrectly sued as Officer Davis." (Doc. No. 23-2, at 2.)

6

some form of contraband." (*Id.* at 7.) If the COs did suspect contraband, plaintiff claims they should have placed him on "potty watch." (*Id.* at 8.) Instead, CO Jane Doe said, "We'll give him the old treatment." (*Id.* at 13.) These two officers took plaintiff to a private room where CO Benson held plaintiff down while CO Jane Doe stuck a finger inside plaintiff's rectum. (*Id.* at 13.) Afterward, CO Jane Doe said, "I don't think he'll walk weird anymore." (*Id.* at 13.) Plaintiff asserts that the COs' "cruel intentions" were demonstrated by CO Benson laughing and asking, "Did you strike gold?" (*Id.* at 13.)

Following his transfer to CSP, plaintiff initiated a staff complaint against HDSP COs Benson and Jane Doe. (*Id.* at 11, 13.) Plaintiff's grievance was processed by CSP staff members. (*Id.* at 9-23.)

On February 18, 2016, CO David approached plaintiff's cell to escort him to a doctor's appointment. (*Id.* at 36.) At the cell door, CO David asked whether plaintiff "was the one who filed a staff complaint against staff at high desert?" (*Id.*) Plaintiff told CO David that any complaints filed by him are none of the officer's business. (*Id.*) CO David then walked away from plaintiff's cell door and said, "You just refused doctor's line." (*Id.*) Plaintiff alleges this was in retaliation for his grievance. (*Id.*)

### III. ANALYSIS

#### A. Claims Against Benson and Jane Doe

Defendants are not entitled to summary adjudication on the plaintiff's claims against defendants Benson and Doe because they did not meet the initial burden of producing evidence showing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *See Albino II*, 747 F.3d at 1172. Defendants submitted evidence in the form of sworn declarations and supporting documents showing that CDCR had an appellate process available at the time of the incident that involved submission of a standardized grievance form and three levels of review. (Oliveria Decl. ¶ 3, Doc. No. 23-5; Chappuis Decl. ¶ 3, Doc. No. 23-4.) However, defendants did not demonstrate that plaintiff failed to exhaust a grievance that supports his claims against defendants Benson and Doe.

| | |
|---|---|
| 1 | To the contrary, defendant's evidence demonstrates that plaintiff exhausted his |
| 2 | administrative remedies by submitting a grievance that supports his claims against defendants |
| 3 | Benson and Doe—"HDSP-O-15-03479"—through the third level of review. (*See* FAC at 11-14, |
| 4 | 17-22; Chappuis Decl. ¶¶ 8-9, Ex. A-B, Doc. No. 23-4; Voong Decl. ¶ 6, Ex. B, Doc. No. 23-6.) |
| 5 | In particular, defendants state facts that plaintiff's grievance, HDSP-O-15-03479, "bypassed the |
| 6 | first level of formal review and HDSP received and accepted the appeal at the second level of |
| 7 | formal review on December 10, 2015." (Chappuis Decl. ¶ 9, Doc. No. 23-4.) Due to the |
| 8 | allegations in plaintiff's grievance, a staff member from the Investigative Services Unit ("ISU") |
| 9 | was assigned to investigate and interview plaintiff. (*Id.*) The interview took place on December |
| 10 | 11, 2015, and afterwards, CDCR issued a second-level response to plaintiff denying his |
| 11 | requested relief. (*See id.*) Plaintiff then submitted the grievance to CDCR's third level of |
| 12 | review—the Office of Appeals ("OOA"). (Voong Decl. ¶ 6, Doc. No. 23-6.) The OOA, upon |
| 13 | reviewing the grievance and the second-level response, remanded it to the second level of review |
| 14 | at HDSP to correct for institutional error: |

> OOA determined further action was necessary at the institution level. OOA requested HDSP amend the second[-]level response. The original second[-]level response provides that "An Appeal Inquiry has been conducted and reviewed by the *hiring authority*." Because the appeal was elevated to *ISU*, OOA requested language be included to reflect this information. OOA then returned the appeal to HDSP with instructions to correct this issue and prepare an amended response. OOA also prepared and sent a letter informing Plaintiff that his appeal was sent back to HDSP for further action on March 28, 2016.

| | |
|---|---|
| 20 | (*Id.* (emphasis added).) |
| 21 | The question here is whether plaintiff was required to resubmit his grievance to the OOA |
| 22 | to exhaust his claims. Defendants do not explain why resubmission was necessary for |
| 23 | exhaustion. In their brief in support of summary judgment, when describing the CDCR's |
| 24 | administrative grievance process, defendants outlined a special process for "modification |
| 25 | order[s]." (Doc. 23-2, at 3.) Specifically, they stated that, "When a modification order is issued, |
| 26 | inmates must appeal to the next level of review within 30 days of receiving the modification |
| 27 | order response." (*Id.*) For this proposition, they cite Cal. Code of Regs. tit. 15, § 3084.7(i)(2) and |
| 28 | M. Voong's declaration (Doc. No. 23-6). Neither defendants, nor the cited sources, however, |

1 explain whether the OOA's decision to remand plaintiff's grievance to the second level of review
2 constitutes a modification order.  The undersigned is loath to infer that this decision was a
3 modification order because "all justifiable inferences" must be drawn in favor of the nonmoving
4 party.  See *Orr*, 285 F.3d at 772.

But even if the OOA's decision is a modification order, defendants have not stated facts that defendants complied with the special, modification-order grievance process.  Cal. Code of Regs. tit. 15, § 3084.7(i) provides requirements that prison officials must satisfy when issuing a modification order, including that "[r]easonable documented proof of completion of the modification order shall accompany the completed order."  The OOA has not brought forward such proof with its motion for summary judgment.  In its letter to plaintiff concerning the modification order, the OOA merely attached the plaintiff's grievance and the original second-level response.  (Voong Decl. ¶ 6, Ex. B, Doc. No. 23-6.)  The text of the letter, in its entirety, was "The Office of Appeals has received your appeal regarding the above matter.  It has been forwarded to the Appeals Coordinator at HDSP for further action."  (*Id.*)  Likewise, the amended second-level response issued by HDSP to the plaintiff does not include an explanation for the aberrant process or "[r]easonable documented proof of completion of the modification."  (Chappuis Decl. ¶ 3, Ex. B, Doc. No. 23-4.)  These communications with the plaintiff neither put him on notice that he was required to resubmit to the third level to exhaust his administrative remedies, nor complied with Cal. Code of Regs. tit. 15, § 3084.7(i).  Defendants have not shown that plaintiff failed to exhaust his administrative remedies.  Thus, they are not entitled to summary adjudication.

**B. Retaliation Claim Against David**

Defendants are not entitled to summary adjudication on the plaintiff's claims against defendant David because they did not meet the initial burden of producing evidence showing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *See Albino II*, 747 F.3d at 1172.  Defendant submitted evidence in the form of sworn declarations and supporting documents showing that CDCR had an appellate process available at the time of the incident that involved submission of a standardized grievance form and three levels of review.  (Oliveria Decl. ¶ 3, Doc. No. 23-5; Chappuis Decl. ¶ 3, Doc. No. 23-

4.) However, defendants did not demonstrate that plaintiff failed properly to exhaust a grievance that supports his claims against defendant David.

To the contrary, defendant's evidence demonstrates that plaintiff exhausted his administrative remedies by submitting a grievance that supports his claim against defendant David—"CSPC-6-16-01646" AKA "COR-16-01646"—through the third level of review, (s*ee* FAC at 34-37; Oliveria Decl. ¶ 12, Ex. E, Doc. No. 23-5; Voong Decl. ¶ 8, Ex. D, Doc. No. 23-6), and the OOA improperly rejected this grievance. The ground that the OOA asserted for rejection was that plaintiff "failed to attach the CDCR Form 1858, Rights and Responsibilities Statement, a necessary supporting document." (Voong Decl. ¶ 8, Ex. D, Doc. No. 23-6.) Defendants and the OOA cite Cal. Code of Regs. tit. 15, § 3084.3 for the proposition that CDCR Form 1858, Rights and Responsibilities Statement is a necessary supporting document in the grievance process. (Voong Decl. ¶ 8, Ex. D, Doc. No. 23-6; Defs.' Mem. Supp. Summ. J. at 6, Doc. No. 23-3.) Cal. Code of Regs. tit. 15, § 3084.3(a) provides that "An inmate or parolee shall obtain and attach all supporting documents, as described in section 3084(h), necessary for the clarification and/or resolution of his or her appeal issue prior to submitting the appeal to the appeals coordinator." Section 3084(h) defines supporting documents as

> documents that are needed to substantiate allegations made in the appeal including, but not limited to, classification chronos, property inventory sheets, property receipts, disciplinary reports with supplements, incident reports, notifications of disallowed mail, trust account statements, memoranda or letters, medical records and written requests for interviews, items or services. Supporting documents do not include documents that simply restate the matter under appeal, argue its merits, or introduce new issues not identified in the present appeal form.

Cal. Code Regs. tit. 15, § 3084. CDCR Form 1858, Rights and Responsibilities Statement, is not enumerated by the regulation, and defendants fail to explain how it is "needed to substantiate allegations made in the appeal." *Id.* Therefore, because the evidence demonstrates that plaintiff properly submitted a grievance through all three levels of review, defendants have failed to meet their initial burden of producing evidence showing that the prisoner did not exhaust an available remedy. Their motion for summary judgment should be denied.

10

**IV.     CONCLUSION**

The undersigned recommends that the court:

1) deny defendants' motion for summary judgment (Doc. No. 23);

2) grant plaintiff's request (Doc. No. 33) to vacate the protective order staying discovery (Doc. No. 29); and

3) grant defendants' motion (Doc. No. 41) to vacate the present discovery and scheduling order (Doc. No. 22).

The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days of the service of the findings and recommendations, plaintiff may file written objections to the findings and recommendations with the court and serve a copy on all parties.  That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).  Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:     August 17, 2018

UNITED STATES MAGISTRATE JUDGE